## MICHAEL H. JOHNSTON

### v.

## GEORGE M. KEENER.

*Partnership—Dissolution—Receiver's Accounts—Reasonable Diligence—Shrinkage—Mistake.*

1. The law only requires that a receiver, appointed to take charge of the property and settle the business of a partnership, shall use ordinary and reasonable diligence in the execution of his trust.

2. Upon appeal from a decree settling the accounts of such a receiver, it is *held:* That he was improperly charged with a discrepancy between the original invoice and the amounts sold; and that he should have been allowed a certain credit claimed on account of error and mistake.

[Opinion filed June 9, 1887.]

APPEAL from the Circuit Court of Mercer County; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. BASSETT & WHARTON, for appellant.

Mr. JOHN C. PEPPER, for appellee.

BAKER, P. J.   This is a controversy growing out of the account rendered by appellant in his capacity of receiver appointed by the court to take charge of the property and settle the business of the firm of Paisley & Keener.   The receiver was not appointed at the instance of creditors, or upon the ground the firm was insolvent, but upon a bill filed by Keener against his partner for a settlement of the partnership affairs, the bill alleging, among other things, that he was dissatisfied, and that the firm assets were mysteriously disappearing.   The appointment of appellant was made by the consent of both partners, and he took charge of the store and assets on the 10th day of July, 1884, under an order of the court, directing him to carry on the business then going on, and buy such goods as might be necessary to keep up the

stock until the further order of the court.  The business of selling merchandise at retail was therefore continued, the stock being replenished from time to time, and both partners remaining in the store and assisting in the sale of goods and in keeping the books and otherwise, one of them until the following October, and the other until the remnant of the stock was sold, as hereafter stated.

On the 19th day of December, 1884, a further decree was entered by the court, to the effect that the receiver should cease purchasing any goods to replenish the stock; should make sale of the furniture and fixtures of the store, and should sell the goods on hand at private sale for thirty days, and the remainder in job lots at public auction.  In accordance with this decree the stock was closed out in January, 1885, on the credit and terms fixed by the order of the court.

The points of contention submitted for our decision arise upon the decree that was afterward rendered by the Circuit Court upon consideration of the report of the receiver and the exceptions filed thereto.  The notes, judgments and accounts due the firm and turned over to the receiver are shown by the invoice taken at the time, and by a subsequent report made by the receiver, to have amounted to the sum of $3,611.08.  It is claimed in the last report of the receiver that there was a mistake in the invoice, and that he was therein charged with $261.88 more of notes, judgments and accounts than he received, and that he should have credit for $261.88, on account of such error and mistake.

His evidence conclusively establishes the fact that the notes and judgments due the firm, and accounts that appeared upon their account books at the time they were placed in the receiver's hands, did not amount to the sum inventoried, and that the shortage was $261.88.  The accounts were inventoried in gross to the receiver at $2,760.89, and that total was arrived at by computations made on loose pieces of paper which were not preserved.

Appellee insists the remainder of the amount invoiced consisted of items taken from tickets and pass books kept in the drawer, and the weight of the evidence tends to show such

was the case; if so, the difference is in part accounted for by the uncollected amounts appearing upon the pass books produced upon the hearing, and in part by the fact shown by the evidence, that when tickets in cash drawer were paid the money was placed in the drawer and included in the day's cash and charged against the receiver at the close of each day. At all events, we are satisfied from the evidence, that the receiver did not get the benefit of any of these cash items, and if any of them were lost through negligence it was that of the partners who were there in the store and did not call the attention of the receiver to them. He testifies positively that he never collected any money on any account kept, or tickets or pass books, and never saw or had possession of any tickets or pass books containing accounts belonging to Paisley & Keener, other than those produced at the hearing; and there is no testimony in conflict with this statement. We think the court should have overruled the exception in that behalf, and should have allowed to the receiver this credit of $261.88.

The receiver reported that the goods invoiced to, and bought by him, sold for $9,164.47. Upon exception filed the court ordered that he charge himself with $10,360.37 for merchandise sold.

This additional charge of $1,195.90 imposed upon appellant, is not based upon the ground that he actually, and in fact, made sales to a larger amount than he reported to the court, but based upon the fact that the sales made do not account for all the goods contained in the invoices. This discrepancy undoubtedly exists, and it is difficult to account for it. To a very small extent it may be accounted for by the twine, wrapping paper, kerosene and other supplies used in the store, and which would appear in the inventory, but not on the sales book. Some goods are shown to have spoiled and been thrown away. So, also, there is always some shrinkage in goods that are sold by weight or measurement. But all these things combined could not possibly account for anything approaching so great a discrepancy as here exists. It is quite probable that mistakes were made in the original invoice, but of this there is no proof, and it would be difficult or quite impossible now to

Johnston v. Keener.

make such proof. It seems to be quite clear, from the evidence, that all the goods that were turned over to the receiver in the first instance, as well as those subsequently purchased by him, (unless they were lost by shrinkage or spoiling, or were stolen,) were sold either at private or public sale; and it seems to be equally clear that the amounts of the sales were each day entered upon the sales book.

If any portion of the stock was stolen, the receiver would not be responsible for the loss, without it could be shown it was through his culpable negligence. Some complaint is made of the way in which the books of account were kept, but then the receiver continued to keep the same character of books, and in the same way that the firm has been accustomed to keep, and much of the time both, and all of the time one, of the members of the firm assisted in the sales and in making entries in the books, and in conducting the business. These partners are the only parties to this suit, and no one other than they, are making any complaint. If there was any fault or negligence in the management of the receiver, they were equally culpable with him. All that the law required of the receiver was, that he should use ordinary and reasonable diligence in the execution of his trust. 2 Story's Eq. Jur., Sec. 1272; Kerr on Receivers, 227; Clinity v. McBride, 1 Scam. 75; Thompson v. Brown, 4 Johnson's Ch'y, 619.

We are unable to say, from the evidence, that appellant did not act with ordinary care and circumspection in discharge of the duties that devolved upon him. We are satisfied from the testimony that he has honestly administered the estate, and that the shrinkage is an honest one, at least so far as he is concerned, and that he should be allowed for it. Our conclusion is, that, as there is no pretense of bad faith on his part, to charge the loss against him would be a hardship that a court of equity should not impose, and that the discrepancy between the original invoices and the amounts sold, should be credited to him on account of mistakes, losses and shrinkages of all kinds. It was error to sustain the exception to the item of goods sold, as it was reported by the receiver.

The only charge to which, in our opinion, an exception was

properly sustained, was that of $84, and it was agreed on the hearing, that amount should be deducted from the schedule of cash paid out.

It follows from the views expressed herein, that it was erroneous to find the balance in the receiver's hands to be $4,825.15, and also erroneous to order him to pay the remainder of the debts of Paisley & Keener, as that would require some $2,000, and he had in his hands, as receiver, only the sum of $844.85, in money. The notes and account in his hands will, when collected, be sufficient to settle up the remaining indebtedness of the late firm, and leave a considerable sum to be turned over to the party or parties entitled thereto.

The order and decree of the Circuit Court is reversed, and the cause remanded for further proceedings in conformity herewith.

*Reversed and remanded.*